ARTHUR B. TEASDALE
vs.
DROWN CHEVROLET, INC., ET AL.

BERTHA H. TEASDALE
vs.
DROWN CHEVROLET, INC., ET AL.

Superior Court      New Haven County      File #49495
#49496

Present:  Hon. CARL FOSTER, Judge.

James P. Doherty,          Attorney for the Plaintiffs.

Chambers & Hesselmeyer,    Attorneys for the Defendants.

## MEMORANDUM FILED DECEMBER 15, 1936.

FOSTER, J.   North Colony Street in Meriden runs north and south and is fifty-one feet wide, and is intersected by Brooks Street running east and west which is twenty-two feet wide.   On October 20th, 1935, at about one o'clock in the afternoon, the day being clear and the pavement of North Colony Street being dry, the plaintiff was driving his motor-cycle north on North Colony Street.   Seated behind him on a tandem seat was his wife, Bertha H. Teasdale, who was the owner of the motorcycle, her husband being her agent in the premises.   Shortly prior to that time an automobile owned by the defendant, Drown Chevrolet Company, Incorporated, had been on Brooks Street, east of North Colony Street, re-ceiving a supply of gasoline.   Having received such gasoline, the defendant, Mastriano, drove west on Brooks Street and upon reaching North Colony Street made a wide turn and swung to the right in toward the east curb of North Colony Street and passed an automobile parked on the east curb of North Colony Street immediately north of Brooks Street. As the motorcycle occupied by the plaintiffs crossed Brooks Street and proceeded northerly, it was being operated at a speed of about twenty-two miles an hour.   It was in high gear but "idling", to use the term of the operator.   Owing to the presence of the parked automobile owned by the de-fendant, Drown Chevrolet Company, neither of the plaintiffs saw the automobile which had been driven in toward the curb immediately north of the parked automobile.   When the motorcycle reached a point immediately opposite the auto-mobile driven by Mastriano, the latter backed his car towards the middle of the highway and the two motor vehicles col-lided, throwing the motorcycle upon its left side striking the right legs of both of its occupants and resting upon the left legs of such occupants.   Before backing his automobile toward

the middle of the highway Mastriano did not look to see if any vehicle was approaching from the south, nor take any other precautions to avoid injuring persons that might be traveling in a northerly direction on the east side of North Colony Street.

The defendants claim that as Mastriano came from Brooks Street he turned north on North Colony Street making a wide swing around the automobile parked on North Colony Street on the northeast corner thereof, and was still proceeding forward toward the curb when he was struck in the rear by the motorcycle occupied by the plaintiffs.

The vital subordinate question in the determination of the ultimate question of negligence is whether Mastriano was proceeding forward at the time of the collision, as he testified, or whether he was backing toward the center of the street at the time of the collision. Both the plaintiffs testified that he was backing. All of their testimony and their demeanor upon the witness stand create confidence by the trier in their credibility. Moreover they are corroborated as to this point by the two witnesses, Pulcinelli and Vumbacco, who testified that they actually saw Mastriano backing his automobile at the time of the collision. Other witnesses and other evidence was offered by the defendants in substantiation of their claim upon this point. They offered no witness who had actual knowledge of the fact, other than Mastriano himself. I do not credit the testimony of Mastriano on this point. The witness Drown did not come to the scene of the accident until five minutes after it happened. The witness Yando did not come to the scene of the accident until the plaintiffs were being removed in automobiles to the hospital. The policeman, Slater, did not reach the scene of the accident until some ten minutes after it happened. The witness Baldwin did not see either of the vehicles until after the accident happened. It is true that there is no evidence of any reason that Mastriano might have had for backing his automobile. No reason was necessary for the determination of the question. He might have had various reasons. The fact is that he did back his automobile suddenly into the highway when he was concealed from north-bound traffic by another parked automobile and did so without sounding his horn or giving any signal of his intention to so back his automobile and did not keep a proper lookout for north-bound traffic on the highway. It is probably true that some part of the automo-

bile of Mastriano before being backed extended out into the street beyond the parked automobile and might have been seen by careful scrutiny on the part of those traveling north in the highway; but even so, the plaintiffs were traveling near to the center of the highway and on the east side thereof and so far away from the east curb of the highway that they would not have been struck, had not Mastriano suddenly and without warning backed his automobile into the highway.

It is an admitted fact that Mastriano was the duly authorized agent of Drown Chevrolet Company, Incorporated, in the premises and that the plaintiff, Arthur B. Teasdale, was the authorized agent of his wife, Bertha H. Teasdale, in the premises. Negligence of Mastriano is negligence of Drown Chevrolet Company, Incorporated, and, if there were contributory negligence on the part of Arthur B. Teasdale, it would be contributory negligence of Bertha H. Teasdale.

I find that the injuries received by each of the plaintiffs were proximately caused by negligence of the defendants as set forth in the complaints as they now exist, after demurrer sustained by this court, without contributory negligence in the premises on the part of either of the plaintiffs. The plaintiff, Arthur B. Teasdale, suffered a comminuted fracture of the right tibia and fibula. He was removed to the hospital where he remained until January 12th, 1936, under constant treatment. He walked for a long while on crutches and was not able to resume his usual occupation until September 10th, 1936. During that period of time he lost wages amounting to twenty-one dollars a week for about forty-five weeks. His doctor's bill was four hundred and forty-six dollars. The plaintiff, Bertha H. Teasdale, suffered a compound comminuted fracture of the right tibia in the middle third, a laceration of the leg directly over the fracture and some contusions of her right leg. A Steinman pin was driven through her heel, and to this a weight attached, and in this position she lay for several weeks. She also had to undergo an operation for the setting of the fractured bones. She remained in the hospital until January 19th, 1936. Her doctor's bill was five hundred and fifty dollars and her hospital bill was five hundred and thirteen dollars and sixty-five cents. Both of these plaintiffs still suffer pain in standing and walking substantial distances and they limp in walking. The prognosis in each case is complete recovery within a year from this date.

In the case of Arthur B. Teasdale judgment is rendered

that he recover from the defendants damages of thirty-five hundred dollars.

In the case of Bertha H. Teasdale judgment is rendered that she recover from the defendants damages of thirty-six hundred dollars.